**Marara Jean KIBBLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–09–00480–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 2, 2010.

Discretionary Review Refused May 11, 2011.

Robert Morrow, Attorney at Law, The Woodlands, TX, for Appellant.

Alan Curry, Chief Prosecutor, Appellate Division, Patricia R. Lykos, Harris County District Attorney, Lisa G. Porter, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

Appellant, Marara Jean Kibble, appeals a judgment convicting her for possession with intent to deliver cocaine weighing between four and two hundred grams. *See* Tex. Health & Safety Code Ann. § 481.112 (Vernon 2010). In two issues, appellant contends that the trial court erred by admitting testimony describing the use of a drug sniffing dog to detect narcotic residue on seized money and by overruling her objections to the prosecutor's improper jury argument. In her third issue, appellant asserts that the evidence is factually insufficient to sustain her conviction. We conclude that the admission of evidence concerning the dog's alert on the money and the State's closing argument are harmless errors and that the evidence is sufficient to support the verdict. We affirm.

## Background

On February 16, 2007, officers from the Houston Police Department (HPD) and the Montgomery County Sheriff's Department executed a "no knock" search warrant at appellant's apartment, located in Houston, Texas. The search warrant permitted officers to search for a digital camera and a laptop computer that were stolen from a house in Montgomery County, Texas.

Upon entering the apartment, HPD Officer Garza saw appellant asleep on the sofa and found two other adults in the living area. A fourth adult and an infant were asleep in the bedrooms. When Officer Garza asked whose apartment it was, appellant said she was the renter. Officer Garza gave her a copy of the search warrant and read legal warnings to appellant and the other adults in the apartment.

Officer Byrd heard Officer Garza read the legal warnings, but appellant's cousin and appellant denied that the warnings were read to appellant.

Officer Garza asked appellant whether there was anything she wanted him to know. In response to his inquiry, appellant stated there were drugs in her red bag near the sofa where she had been sleeping. Officer Garza retrieved the red bag and found what was later determined by a chemist to be thirty-one rocks of crack cocaine, weighing 7.3 grams, and seven individual bags of powder cocaine, weighing 1.3 grams. The officers' search of the apartment also revealed the camera and laptop computer that were the subject of the search warrant as well as paraphernalia for smoking crack cocaine.

Appellant was arrested and transported to the jail where a female officer searched her. The female officer found $1,400 on appellant in denominations of twenties, tens, fives, and ones. Officer Guerrero, with the HPD canine narcotics unit, testified that he and his assigned dog, Bo, were called to the property room. There, Officer Guerrero was told that, prior to his arrival, the cash had been hidden in the parking lot, but he was not informed where it was hidden. Outside, he released Bo from his kennel and gave Bo the search command. Bo alerted to the location of the money. Testifying as an expert in canine narcotics detection, Guerrero stated that Bo's alert meant that there was a narcotic odor coming from the bag containing the money. Officer Guerrero noted that he had no personal knowledge of the contents of the bag because he never looked inside it.

At trial, appellant testified that she bought the laptop and camera from a neighbor without knowledge of the theft and that she had never seen the red bag. Appellant and her friend Dona Davis each testified that Davis gave appellant the cash to repay appellant for a purchase made by Davis on appellant's credit card.

Appellant pleaded not guilty to the jury. The jury found her guilty and the trial court assessed punishment at thirty-five years in prison.

### Sufficiency of the Evidence

In her second issue, appellant challenges the factual sufficiency of the evidence that she possessed narcotics with the intent to deliver.

### A. Standard of Review

This Court now reviews both legal and factual sufficiency challenges using the same standard of review. *Ervin v. State*, 331 S.W.3d 49, 52–55 (Tex.App.-Houston [1st Dist.] 2010, pet. filed) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893, 912–13, 924–28 (Tex.Crim.App.2010)). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *In re Winship*, 397 U.S. 358, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex.Crim.App.2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007). Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. at 2786, 2789 n. 11, 2789; *Laster*,

275 S.W.3d at 518; *Williams,* 235 S.W.3d at 750. Additionally, the evidence is insufficient as a matter of law if the acts alleged do not constitute the criminal offense charged. *Williams,* 235 S.W.3d at 750.

■ If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982). An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *See Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007) (citing *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App.2007)). In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* (citing *Hooper,* 214 S.W.3d at 13). An appellate court presumes that the factfinder resolved any conflicting inferences in favor of the verdict and defers to that resolution. *See Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793; *Clayton,* 235 S.W.3d at 778. An appellate court also defers to the factfinder's evaluation of the credibility of the evidence and weight to give the evidence. *See Williams,* 235 S.W.3d at 750.

## B. Possession of Cocaine with Intent to Deliver

To demonstrate possession of cocaine with intent to deliver, the State is required to show that (1) appellant knowingly or intentionally, (2) possessed, (3) cocaine, (4) in an amount of greater than four but less than two hundred grams, (5) with the intent to deliver the cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a),

(d). In order to prove the possession element of this offense, the State is required to present evidence that appellant had actual care, custody, control, or management over the contraband and that appellant knew it was contraband. *See id.* § 481.002(38) (Vernon 2010); *Deshong v. State,* 625 S.W.2d 327, 329 (Tex.Crim.App. 1981); *Olivarez v. State,* 171 S.W.3d 283, 291 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

■ When the accused is not in exclusive possession of the place where the contraband is found, then additional, independent facts and circumstances must link the defendant to the contraband in such a way that it can reasonably be concluded that she had knowledge of the contraband and exercised control over it. *Roberson v. State,* 80 S.W.3d 730, 735 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). This link may be shown through direct or circumstantial evidence, including the amount of contraband found, its location in relationship to the defendant's personal belongings, the defendant's relationship to other persons with access to the premises, incriminating statements, and proximity of the defendant to the contraband. *See Olivarez,* 171 S.W.3d at 291.

■ Intent to deliver can be proven by circumstantial evidence. *Rhodes v. State,* 913 S.W.2d 242, 251 (Tex.App.-Fort Worth 1995), *aff'd,* 945 S.W.2d 115 (Tex.Crim. App.1997). An oral expression of intent is not required; intent can be inferred from the acts, words, and conduct of the accused. *Patrick v. State,* 906 S.W.2d 481, 487 (Tex.Crim.App.1995). Some factors to consider in determining intent include (1) the nature of the location where the defendant was arrested, (2) the quantity of drugs the defendant possessed, (3) the manner of packaging of the drugs, (4) the presence or absence of drug paraphernalia,

(5) whether the defendant possessed a large amount of cash in addition to the drugs, and (6) the defendant's status as a drug user. *Williams v. State*, 902 S.W.2d 505, 507 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). These are evaluative factors for the court to take into consideration when reviewing the sufficiency of the evidence but are not each required to be present. *See Branch v. State*, 599 S.W.2d 324, 325–26 (Tex.Crim.App.1979) (evidence factually sufficient although no paraphernalia found on defendant and no apparent testimony as to street value of substance confiscated). Expert testimony may be introduced to prove intent to deliver. *See Rhodes*, 913 S.W.2d at 251.

## C. Analysis

█ Appellant challenges the factual sufficiency of the evidence. Relying on her own testimony, appellant attempts to show that she did not possess the drugs, that she did not know that the drugs were in her apartment, and that the evidence does not show an intent to deliver the drugs. She also refers to testimony by her cousin, Edward Lofton, and her friend, Davis, both of whom testified that appellant did not possess or sell cocaine from her apartment. Appellant testified that she did not have exclusive possession of the apartment and that numerous people came and went frequently. Appellant contended that she had never seen the drugs before and that the money was from the recent repayment of a loan to Davis. Appellant also denied having made the incriminating statements claimed by Officer Garza. By finding appellant guilty of possession with intent to deliver cocaine, the jury did not find appellant's evidence credible, and we must defer to the jury's assessment of the weight to give the evidence. *See Williams*, 235 S.W.3d at 750.

A photo taken at the scene shows the red bag that contained the cocaine was next to appellant's purse on the couch that appellant was seen lying on when the officers entered the apartment. Additionally, appellant acknowledged during her arrest that there were drugs in "her" red bag near the sofa. Furthermore, objects for using cocaine were found throughout the apartment.

The State also presented evidence tending to establish that appellant possessed the cocaine with intent to deliver. Officer Garza testified that appellant told him that she possessed the narcotics in order to sell them. Furthermore, the cocaine was separated into thirty-one crack cocaine rocks and seven individual baggies of powder cocaine. Officer Garza testified that he had twenty-six years of experience with the Houston Police Department, fourteen of which were in the narcotics division, and that in his opinion the cocaine was packaged to sell. *See Prather v. State*, 238 S.W.3d 399, 402–03 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) (evidence was sufficient to show that defendant intended to deliver cocaine found in his possession, where 7.7 grams of cocaine was found in two bags in defendant's pocket, one bag contained sixteen smaller bags of what appeared to be single-use amounts of cocaine, second bag contained two large "cookies" of cocaine, officer testified that defendant intended to sell cocaine, and chemist opined that units of cocaine in sixteen smaller bags were likely to have been intended for delivery). Finally, appellant was in possession of $1,440 in small bills.

We conclude that, based on the evidence viewed in the light most favorable to the verdict, the jury could have rationally found each element of the offense beyond a reasonable doubt. *See Ervin*, 331 S.W.3d at 54; *see also Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Williams*, 235 S.W.3d at 750. We hold the evidence is

sufficient to support appellant's conviction for possession. *See Pitts v. State*, 731 S.W.2d 687, 692 (Tex.App.-Houston [1st Dist.] 1987) (evidence of quantity of cocaine seized, together with police officer's expert opinion as to amount usually possessed for personal use sufficient to show possession with intent to deliver).

We overrule appellant's second issue.

## Reliability of Expert Testimony Regarding Narcotic Dogs

 In the first issue, appellant contends the trial court erred by admitting evidence concerning the narcotic dog's alert to the scent of narcotics on the money because the expert's testimony is unreliable. Assuming the trial court erred by admitting evidence concerning the dog's alert on the money, we conclude the error was harmless.

 A trial court's improper admission of evidence is a nonconstitutional error. *See King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *James v. State*, 264 S.W.3d 215, 222 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd). Thus, an appellate court will reverse a judgment if the improper admission of evidence affected a substantial right of the appellant. *See* Tex.R.App. P. 44.2(a), (b); *King*, 953 S.W.2d at 271; *James*, 264 S.W.3d at 222. A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King*, 953 S.W.2d at 271; *James*, 264 S.W.3d at 222. Error that did not influence the jury's verdict or had but a slight effect is harmless error. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex.Crim.App. 2001). The improper admission of evidence is harmless if the trial record contains other, properly admitted evidence that is probative of the same matter. *See Saldano v. State*, 232 S.W.3d 77, 102 (Tex.

Crim.App.2007); *James*, 264 S.W.3d at 222.

The evidence that the narcotic dog alerted on appellant's money, indicating that the money was in contact with illegal drugs, tends to suggest that appellant engaged in illegal drug transactions and that she intended to deliver the cocaine found in her possession. *See $7,058.84 in U.S. Currency v. State*, 30 S.W.3d 580, 588 (Tex.App.-Texarkana 2000, no pet.). As Officer Garza testified, the evidence that the crack cocaine was separated into thirty-one rocks and the powder cocaine was packaged into seven individual bags, indicating that drugs were ready for distribution, also establishes that appellant engaged in illegal drug transactions and that she intended to deliver the cocaine found in her possession. *See Prather*, 238 S.W.3d at 400. Additionally, appellant admitted that she possessed the cocaine with intent to sell it. Furthermore, regardless of whether the bills contained a slight odor of cocaine, the jury could have reasonably determined from amount of money and small denominations of the bills that the money was evidence of the sale of drugs in light of the many cocaine packages found in appellant's possession. Finding properly admitted evidence in the record tending to establish the same matter as the assumedly improperly admitted evidence, we conclude that the admission of the evidence that the narcotic dog alerted on appellant's money was harmless. *See Saldano*, 232 S.W.3d at 102; *James*, 264 S.W.3d at 222.

We overrule appellant's first issue.

### Improper Argument

In her third issue, appellant contends that the trial court committed reversible error in overruling her objections to the prosecutor's improper argument.

**A. Applicable Law**

The approved areas of argument are: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App.2000). When an argument exceeds the permissible bounds of these approved areas, it is reversible error only when an analysis of the record as a whole shows the argument is extreme or manifestly improper, is violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook*, 29 S.W.3d at 115; *see also Hawkins v. State*, 135 S.W.3d 72, 79 (Tex.Crim.App.2004). An appellate court, in assessing the harm of an improper argument, looks to three factors: "(1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.1998).

### B. State's Argument Directed at Appellant's Attorney

Appellant asserts that the trial court, in overruling her objections to portions of the State's jury argument, allowed the State to strike at her over the shoulders of her counsel by attacking counsel's character for truthfulness.

The State may argue outside the record in response to the defense having done so, but it may not stray beyond the scope of the invitation. *Johnson v. State*, 611 S.W.2d 649, 650 (Tex.Crim.App.1981); *Longoria v. State*, 154 S.W.3d 747, 766 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd). In most circumstances, an instruction to disregard the remarks will cure the error. *Hawkins*, 135 S.W.3d at 79. Only offensive or flagrant error warrants reversal when there has been an instruction to disregard. *Id.*

The Texas Court of Criminal Appeals maintains a special concern for final arguments that result in uninvited and unsubstantiated accusations of improper conduct directed at a defendant's attorney. *Mosley*, 983 S.W.2d at 258–59. In its most egregious form, this kind of argument may involve accusations of manufactured evidence or an attempt to contrast the ethical obligations of prosecutors and defense attorneys. *Mosley*, 983 S.W.2d at 258. A prosecutor runs a risk of improperly striking at a defendant over the shoulders of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character. *Mosley*, 983 S.W.2d at 259. However, comments directed at the defense attorney in closing arguments may not be erroneous so long as they can be interpreted as an attack on arguments made by the defense counsel. *Mosley*, 983 S.W.2d at 258–59.

Appellant challenges the following argument:

[State]: Does anyone doubt that a camera can fit in this red bag? You know, throughout this entire trial from day one defense counsel has suggested that I'm not being completely truthful with you.

[Defense]: Your Honor, I object at that, that—her claiming that I'm not being truthful with the prosecutor, that is very prejudicial, we object to that. It's—

[The Court]: That's overruled.

[State]: He suggested that the officers from the Houston Police Department are not being truthful with you. . . .

Contrary to appellant's position, the statements by the State's attorney addressed

the truthfulness of the State's case; the State did not question the truthfulness of appellant's attorney. Furthermore, prior to this statement, the record shows that appellant's jury argument repeatedly impugned the accuracy and honesty of the State's case. For example, appellant's trial counsel stated, "You know, they're officers, why would they make something up? Why would they not be completely truthful?" Appellant's trial counsel suggested that the officers falsely testified that appellant admitted ownership of the cocaine in the red bag. We conclude the prosecutor was responding to accusations that the prosecutor and officers were fabricating evidence. *See Wesbrook*, 29 S.W.3d at 115 (holding answer to argument of opposing counsel is one permissible area of jury argument).

■ Next, appellant contends that the following closing argument made by the State struck at her over the shoulders of her counsel:

> Now, everyone in the courtroom, well, practically everyone in this courtroom, took an oath. The judge took an oath. I took an oath as a prosecutor. You took all took oaths as jurors. You took an oath to return a true verdict. Well, those witnesses that testified yesterday, they took oaths too. Now, I take my oath very seriously, obviously Judge Reagin takes her oath very seriously, and I can tell from your attentiveness that you all take your oaths very seriously as well.

Appellant objects to the phrase "well, practically everyone" as tantamount to the prosecutor arguing that defense counsel did not take an oath and is not trustworthy. Appellant cites *Lewis v. State*, for the conclusion that the prosecutor's argument was explicitly prohibited. 529 S.W.2d 533, 534 (Tex.Crim.App.1975). However, in *Lewis*, the court found the

argument prohibited because the prosecutor specifically told the jury that the defense counsel had not taken an oath to uphold justice as compared to the prosecutor, who had. *Id.* In addition, after the trial judge in *Lewis* sustained the defendant's objection to that argument, the prosecutor contended that the defense counsel was not an officer of the court. *Id.* As the State points out in its brief to this Court, the case at hand is distinguishable from *Lewis*. The prosecutor in this case did not explicitly state that the defense attorney had not taken an oath. The comment about not taking an oath is indirect in that there were other people in the courtroom who did not take an oath, including people in the audience, the court coordinator, the court clerks, and the bailiffs. We conclude that as phrased in this case and in the absence of evidence showing the comment was directed at appellant's attorney, the trial court did not abuse its discretion by overruling appellant's objections. *Cf. id.*

The prosecutor's argument here is very similar to one addressed in *Lange v. State*, 57 S.W.3d 458 (Tex.App.-Amarillo 2001, pet. ref'd). In *Lange*, during closing argument in the trial below, the prosecutor stated, "As a prosecutor, . . . I . . . took an oath to uphold justice. . . . Now, [the defense counsel's] here to defend his client. That the only thing he's here to do." *Id.* at 465–66. *Lange* held that the prosecutor's comments were permissible because the defense counsel had argued that the prosecutor had improperly coached one of the State's witnesses. *Id.* at 467. Like *Lange*, throughout the defense's closing argument, appellant's trial attorney argued that the State and police officers had falsified evidence and, therefore, the State's attorney's reference to his own oath and to his witnesses' oaths is a proper rebuttal to the claims made by appellant's attorney. *Cf. Harris v. State*, 122 S.W.3d 871, 885,

887 (Tex.App.-Fort Worth 2003, pet. ref'd) (holding prosecutor's comment, made during rebuttal closing argument, that he took oath as prosecutor to see that justice was done was not improper strike over shoulders of defense counsel where prosecutor made comment in response to defense counsel's assertion that State witnesses had lied).

### C. State's Arguments Concerning Credibility of Evidence

Appellant asserts that the prosecutor improperly argued that appellant's attorney wanted the jury to believe that appellant was telling the truth and the officers were not. The prosecutor argued:

> [D]efense counsel wants you to believe that that [incriminating] statement [claimed by Officer Garza to have been made by appellant] was never made. Once again he wants you to believe that [appellant], who has all the incentive and all the motive in the world to lie, is telling you the truth.

However, before the prosecutor made this argument, appellant's counsel had repeatedly argued that the officers were untruthful. Defense counsel argued:

> They're narcotics officers. Hey, this looks like illegal drugs. But they got a problem. They got a problem. The bag, it wasn't in plain view. Look at the State's evidence.... Look at the picture. The bag is not open. The bag is closed. Okay. The bag is closed. All right.
>
> Well, how are we going to connect it with somebody? ... I'm sure they found out Ms. Kibble was on parole. Well, this is hers. We'll just say this is hers.
>
> How are we going to do that? ... [W]ell, she's going to say she—she's going to tell us it was there, because they know the exception to having a warrant is finding something that—when the

client—when the accused person makes a statement that leads them to find something they didn't know about. That's how they get around it, okay. So they just say, well, she told us that.

We conclude that the prosecutor's observation that appellant wanted jurors to believe her rather than the officers was a reasonable deduction from the evidence and was made in response to the argument of opposing counsel challenging the veracity of the officers. *See Wesbrook*, 29 S.W.3d at 115.

Next, appellant contends that the prosecutor went purposefully outside of the record to present information to the jury that appellant is on parole with the possibility of it being revoked. During cross-examination of appellant, appellant acknowledged that she was on twenty-five years parole and that if convicted she was looking at a parole revocation. Because the evidence was in the record, the closing argument properly commented on admitted evidence. *See Wesbrook*, 29 S.W.3d at 115.

### D. State's Argument Concerning Plea for Law Enforcement

Appellant complains that the prosecutor used "over the top theatrics to get a conviction, regardless of the propriety of the argument." The State argued, as follows:

> If you find what they said credible, if you believe what they told you, you're saying to the Houston Police Department, no thank you, I like drugs on my street. No thank you, I like for there to be crack houses where there are babies asleep.

The record shows, however, that appellant's attorney objected to this argument by stating, "Your Honor, I'm going to object to the State trying to interject punishment argument, plea for law enforcement." Appellant's objection concerning "thea-

trics" is not preserved for appeal. *See* TEX.R.APP. P. 52(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App.2002).

### E. State's Argument Concerning Prior Convictions

▇ Appellant claims that the trial court reversibly erred by refusing to grant a mistrial when the prosecutor improperly argued appellant's prior convictions. The State made the following argument:

> Now, I don't want anyone to get confused and think that somehow selling drugs is a victimless crime. Selling drugs is a crime with exponential victims because not only does it impact the user, it impacts the user's family, it impacts the community that the user lives in, and we already know from her priors that Ms. Kibble has victims in her past that she has victimized. The credit card abuse, she stole someone's credit card, and made purchases. Unlawful use of a motor vehicle...."

After the State made this argument, appellant's attorney's objection was sustained and the trial court instructed the jury to disregard the comment. The prior convictions were admitted solely to attack appellant's credibility, and it was improper for the State to address the prior convictions to argue appellant had victimized other people in the past. *See Sanchez v. State*, 591 S.W.2d 500, 501–02 (Tex.Crim.App. 1979) (when evidence of prior convictions is admitted solely on issue of defendant's credibility as witness, State may not argue to jury that prior convictions are evidence of defendant's guilt). Because the trial court instructed the jury to disregard the comment, we must examine whether the record as a whole supports a conclusion that the jury could disregard the comment, as instructed by the court.

We must balance the three *Mosley* factors to determine the extent of harm caused by this error. First, the record shows that these prior convictions, while argued erroneously during closing, were admitted before the jury and, therefore, the argument does not inject new facts harmful to the accused. *See Wesbrook*, 29 S.W.3d at 115. Second, the trial court sustained the objection by the defense and instructed the jury to disregard. In most circumstances, an instruction to disregard the remarks will cure the error. *Wesbrook*, 29 S.W.3d at 115. Only offensive or flagrant error warrants reversal when there has been an instruction to disregard. *Hawkins*, 135 S.W.3d at 79. Third, the evidence supporting appellant's possession with intent to deliver cocaine in this case is sufficiently strong to assure us of a high certainty that the jury would have found her guilty even had the improper argument been excluded. *See Mosley*, 983 S.W.2d at 259. We hold that under the totality of the record the comment that appellant's previous convictions resulted in victims was not so offensive or flagrant to warrant reversal of this case.

We overrule appellant's third issue.

### Conclusion

We affirm the judgment of the trial court.

Justice JENNINGS, concurring.

TERRY JENNINGS, Justice, concurring.

I join the majority opinion, but write separately to specifically explain why I join it in regard to the question of fact presented to this Court by appellant, Marara Jean Kibble, in light of my recent concurring opinion in *Ervin v. State*, 331 S.W.3d 49, 56–69 (Tex.App.-Houston [1st Dist.] 2010, no pet. h.) (Jennings, J., concurring).

In her second issue, appellant argues that the evidence is factually insufficient to support her conviction for possession with intent to deliver cocaine weighing between

four and two hundred grams [1] because that evidence is so weak that the jury's verdict is clearly wrong and manifestly unjust.

In regard to appellate challenges based on the factual insufficiency of the evidence, the factual-conclusivity clause of the Texas Constitution provides in no uncertain terms that:

> [T]he decision of [Texas Courts of Appeals] shall be *conclusive* on all questions of fact brought before them on appeal or error.

TEX. CONST. art. V, § 6(a) (emphasis added). The original intent of the drafters of the clause is clear. The clause "requires" that Texas courts make a "distinction" between questions of law and questions of fact. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 621 (Tex.2004). As recently recognized by the Texas Court of Criminal Appeals, "The Factual Conclusivity Clause gives *final appellate jurisdiction* to the court of appeals on questions of fact brought before the court." *Laster v. State*, 275 S.W.3d 512, 518 (Tex.Crim.App. 2009) (emphasis added).

Under the factual-conclusivity clause, this Court has a duty to address appellant's question of fact as a question of fact, i.e., by neutrally considering and weighing all the evidence in the record, including that which is contrary to the jury's verdict. *Laster*, 275 S.W.3d at 518–19; *Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App. 1997); *Ex parte Schuessler*, 846 S.W.2d 850, 852 (Tex.Crim.App.1993); *Meraz v. State*, 785 S.W.2d 146, 153 (Tex.Crim.App. 1990); *see also Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633–35 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). Moreover, the Texas Legislature has expressly directed, consistent with the factual-conclusivity clause, that Texas courts of appeals "may reverse

the judgment in a criminal action . . . upon the facts." TEX.CODE.CRIM. PROC. ANN. art. 44.25 (Vernon 2006) (entitled, "Cases Remanded"). Indeed, it is reversible error for a court of appeals to address a question of fact as a question of law. *In re King's Estate*, 244 S.W.2d at 661–62; *Ex parte Schuessler*, 846 S.W.2d at 852; *Meraz*, 785 S.W.2d at 153.

Regardless, five judges on the court of criminal appeals, in two separate opinions, have recently concluded that in criminal cases "a legal-sufficiency [appellate] standard [of review] is 'indistinguishable' from a factual-sufficiency [appellate] standard" of review. *Brooks v. State*, 323 S.W.3d 893, 901–02 (Tex.Crim.App.2010) (Hervey, J., joined by Keller, J., Keasler, J., and Cochran, J.); *see id.* at 912–28 (Cochran, J., joined by Womack, J., concurring) (overruling use in criminal cases of factual-sufficiency appellate standard of review, which was consistent with Texas Supreme Court precedent and articulated in *Clewis v. State*, 922 S.W.2d 126, 134–36 (Tex. Crim.App.1996)). The five judges purport to substitute a legal-sufficiency appellate standard of review in place of a factual-sufficiency appellate standard of review. *Brooks*, 323 S.W.3d at 894–95 (holding that legal-sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) is "only standard" reviewing court should apply in determining whether evidence is sufficient to support each element of criminal offense). Asserting that the "two standards *have become* essentially the same standard and that there is no meaningful distinction between them that would justify *retaining them both*," the five judges purport to eliminate from Texas's criminal jurisprudence the factual-sufficiency appellate standard of review. *Id.* (emphasis added).

---

1. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2010).

The effect of this, which was not addressed by the five-judge majority in either of their opinions, would be to prohibit Texas courts of appeals in criminal cases from actually deciding questions of fact, which by their very nature require a Texas court of appeals to consider and weigh all the evidence in a trial record and, if appropriate, reverse the judgment of a trial court and remand for a new trial. It would confine the courts of appeals to addressing the purely legal question of whether the evidence, when not weighed, but rather when viewed in the light most favorable to the prosecution, is legally sufficient to support a criminal conviction. Thus, it would render the factual-conclusivity clause of the Texas Constitution and article 44.25 of the Texas Code of Criminal Procedure dead letters in criminal appeals.

Simply put, the court of criminal appeals has neither the jurisdiction nor any lawful authority to do this. In fact, three years prior to issuing its opinion in *Clewis*, the court itself acknowledged that it simply may not order Texas courts of appeals to use a legal-sufficiency appellate standard of review to decide the questions of fact brought before them on appeal. *Ex parte Schuessler*, 846 S.W.2d at 852. Recognizing that it may not "interfere[ ] with the fact jurisdiction of the intermediate appellate courts," the court emphasized that it is "not constitutionally authorized to adopt a standard of review for the court[s] of appeals ... *inconsistent* with Art. V, § 6 of [the Texas] Constitution." *Id.* at 853 (emphasis added) (quoting *Meraz*, 785 S.W.2d at 153). Any such action taken by the court of criminal appeals is, in its own words, "void *ab initio.*" *Ex parte Schuessler*, 846 S.W.2d at 853.

In regard to the plurality and concurring opinions in *Brooks*, it is true that under the doctrine of stare decisis that once "the highest court of the State *having jurisdiction* " of a matter decides a "principle, rule or proposition of law," that court and all "other courts of *lower rank* " must accept the decision as "binding precedent." *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964) (emphasis added). It is also true that the court of criminal appeals has final appellate jurisdiction on all questions of law in criminal cases. TEX. CONST. art. V, § 5. However, only four of the five court of criminal appeals judges who would substitute the *Jackson* legal-sufficiency standard for a factual-sufficiency standard purport to do so under Article V, section 5 of the Texas Constitution. *Brooks*, 323 S.W.3d at 912–13 (Hervey, J.).

More importantly, under the factual-conclusivity clause, a Texas court of appeals, in regard to its decisions on the questions of fact presented to it, is not a court of rank "lower" than either the supreme court or the court of criminal appeals because the courts of appeals have conclusive, exclusive, and final authority over such questions of fact. As recognized by the court of criminal appeals, the factual-conclusivity clause gives "final appellate jurisdiction to the courts of appeals on questions of fact brought before" them. *Laster*, 275 S.W.3d at 518. And neither the supreme court nor the court of criminal appeals has any jurisdiction to create a factual-sufficiency appellate standard of review "in conflict" with the Texas Constitution, i.e., any standard that would eliminate or in any way interfere with the exclusive authority of the courts of appeals to actually decide the questions of fact presented to them by considering and weighing all the evidence in a trial record. *Ex parte Schuessler*, 846 S.W.2d at 852; *Meraz*, 785 S.W.2d at 152; *see also Pool*, 715 S.W.2d at 633–35; *In re King's Estate*, 244 S.W.2d at 661–62. Thus, the doctrine of stare decisis does not bind a Texas court of appeals to apply such an invalid, unconstitutional appellate standard of review.

Nevertheless, the majority of this Court in *Ervin* decided to answer Ervin's question of fact as a question of law by applying the *Jackson* legal-sufficiency appellate standard of review. *Ervin,* 331 S.W.3d at 53–56. Although the majority erred in doing so, this Court did have jurisdiction to so err, and, unless this Court subsequently overrules *Ervin,* we must accept *Ervin* as binding precedent. *Swilley,* 374 S.W.2d at 875.

Accordingly, I join the majority opinion.