Opinion issued April 12, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-01045-CR

———————————

Ezequiel Munoz Rodriguez, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 178th Judicial District Court 

Harris County, Texas



Trial Court Case No. 1118656

 



 

MEMORANDUM OPINION

          A
jury found appellant, Ezequiel Munoz Rodriguez, guilty of the offense of aggravated
sexual assault of a child[1] and assessed his punishment
at confinement for five years.  In his
sole issue, appellant contends that the trial court erred in allowing the State
to make improper arguments during the guilt and punishment phases of trial.

          We
affirm.

Background

          The
complainant testified that in 2003, when she was eight years old and lived in
her grandfather’s house, he rented out a smaller house in his backyard to
appellant, his wife, and at least four of their children.  The complainant went to the same elementary
school as one of appellant’s daughters, B.R., and she would often visit appellant’s
house to play with B.R.  One summer day, the
complainant was playing with B.R. in the living room of appellant’s house,
while appellant, the only other person in the house, was in his bedroom.  B.R. wanted to visit the complainant’s house,
so she told the complainant to ask appellant for permission because “if [the
complainant] asked him he would let her go.” 
The complainant entered appellant’s bedroom, noticed he was in the
adjoining bathroom, and knocked on the bathroom door.  When she received no answer, the complainant
turned and started walking out of the bedroom, but appellant soon exited the bathroom.  The complainant then asked him for his
permission for B.R. to visit her house, but appellant did not respond.  Instead, appellant approached the
complainant, grabbed her waist, “turned [her] around,” and pulled down her
pants.  The complainant “pulled them back
up,” but appellant pulled them back down and restrained her hands.  Appellant then pulled down his pants,
“inclined” the complainant over his bed, and engaged in anal sexual intercourse
with her.  After “three or four minutes,”
he stopped, grabbed the complainant’s hand, placed it on his sexual organ, and
“squeezed” her hand around it.  Appellant
then pulled up his pants and gave permission for B.R. to visit the
complainant’s house.  The complainant did
not tell anyone about the assault until she told her mother years later because
she “was scared to lose [her] friendship” with B.R.  

          Adriana
Lopez, the complainant’s mother, testified that in 2003, she lived in her
father’s house along with her grandmother, uncle, and the complainant.  Appellant lived in a “smaller house” located
behind her father’s house with his wife and six children, but they moved out later
that year.  Because of the move, B.R. and
the complainant no longer attended the same school and stopped “spend[ing] time
at each other’s houses.”  In February
2007, the complainant told her that, when they lived in the house of Lopez’s
father, the complainant was playing with B.R. when appellant sexually assaulted
her.  Lopez immediately reported to law
enforcement authorities what the complainant had said.  

          Maria
Rodriguez testified that she moved to the United States from Mexico in 2001 to
live with appellant, her husband, who was already living in Houston.  She explained that the complainant and one of
her daughters, B.R., would often play together, both in her house and the
complainant’s house, but the complainant never entered her bedroom.  Rodriguez noted that her family moved out of
the house in December of 2002.  On
cross-examination, she testified that the complainant could not have had an
opportunity to be alone in the house with appellant because “he was always
working.”  

          B.R.
testified that when she lived behind the complainant’s house, the girls would
play in the complainant’s house “[a]lmost all the time.”  She explained that she never had to ask for
permission to visit the complainant’s house and she did not recall the
complainant ever entering her parents’ bedroom. 


          E.R.,
appellant’s son, testified that he would often play with the complainant and
B.R., but they would usually play in the complainant’s house and would rarely play
in his family’s house.  He explained that
he and his sister did not need to ask for permission to enter the complainant’s
house and he only saw the complainant enter his parents’ bedroom once, when he
and his sister were already inside the bedroom. 
    

 Improper
Jury Argument

In his sole issue,
appellant argues that the trial court “erred in permitting the improper jury
argument of the prosecutor” because the “uninvited comments made by the
prosecutor were so prejudicial that the jury’s deliberation was improperly
influenced.”

Proper jury argument is generally limited to (1) a summation of the
evidence presented at trial, (2) reasonable deductions drawn from that
evidence, (3) answers to opposing counsel’s argument, and (4) pleas for law
enforcement.  Westbrook v. State, 29 S.W.3d
103, 115 (Tex. Crim. App. 2000) (en banc); Swarb v. State, 125 S.W.3d
672, 685 (Tex. App.—Houston [1st Dist.] 2003, pet. dism’d).  A trial court has broad discretion in
controlling the scope of closing argument.  Lemos v. State, 130 S.W.3d
888, 892 (Tex. App.—El Paso 2004, no pet.); see Herring v. New York, 422 U.S.
853, 862–63, 95 S.Ct. 2550, 2555–56 (1975).  The State is afforded wide latitude in its
jury arguments and may draw all reasonable, fair, and legitimate inferences
from the evidence.  Allridge v. State, 762 S.W.2d
146, 156 (Tex. Crim. App. 1988).

Appellant first complains of the following statement, made by the State
during closing argument in the guilt phase of trial,

The one question was . . . [whether the complainant was]
ever over at the small house, the backhouse, the second house?  And just amongst those three witnesses, the
son, the daughter, the wife, who all have something to gain from him if we walk
right out of this building.  We heard,
“No,” “Never,” “She was never, ever in the house.”  

 

Appellant objected to the statement as “[a]rguing outside
the scope of the testimony,” and the trial court instructed the jury as
follows:

As I indicated to you earlier, neither side would attempt
to lead you from what you – mislead you from what you’ve heard.  You’d be guided from what you heard from this
witness stand and now what the lawyers say in their argument unless it
coincides with what you heard.  Thank
you.

 

          Maria Rodriguez testified that the
children would “often” play together, both in her house and the complainant’s
house.   B.R. and E.R. both testified
that the children “rarely” played in appellant’s house.  Thus, the State’s comment that appellant’s
witnesses testified that the complainant had “never” entered their home was
outside of the testimony elicited at trial and was not a reasonable deduction
from the evidence.  See Westbrook, 29 S.W.3d at 115.  To the extent that the trial court’s response
could be interpreted as an implicit overruling of appellant’s objection, we
conduct a harmful-error analysis.

          When an argument exceeds permissible
bounds, it constitutes reversible error only when an analysis of the record as
a whole shows the argument is extreme or manifestly improper, is violative of a
mandatory statute, or injects new facts harmful to the accused into the trial
proceeding.  Id.; see also
Hawkins v. State, 135 S.W.3d 72, 79 (Tex. Crim. App. 2004).  An appellate court, in assessing the harm of
an improper argument, looks to three factors: “(1) severity of the misconduct
(the magnitude of the prejudicial effect of the prosecutor’s remarks); (2)
measures adopted to cure the misconduct (the efficacy of any cautionary
instruction by the judge); and (3) the certainty of conviction absent the
misconduct (the strength of the evidence supporting the conviction).”  Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

          Here, the State’s characterization of
the testimony of the defense witnesses deviated only slightly from their actual
testimony.  And the substance of the
State’s claim, challenging the credibility of appellant’s witnesses because of
their dependence on appellant, was reasonably supported by the evidence.  On cross-examination, Maria Rodriguez
testified that she had been married to appellant for thirty-two years and
appellant worked to provide for her and their six children.  Counsel may attack the credibility of a
defense witness during closing argument if the argument is reasonably supported
by the evidence.  See Satterwhite v. State, 858 S.W.2d 412, 425 (Tex. Crim. App.
1993) (“A prosecutor is allowed to argue that the witnesses for the defense are
not worthy of belief.”).  Thus, the only
impropriety in the statement was slight, and the first Mosley factor indicates that the error was not harmful.

          In regard to the second Mosley factor, although the trial court
did not specifically sustain appellant’s objection or instruct the jury to disregard
the statement, it did properly instruct the jury to consider the substance of
the witnesses’ testimony and not counsel’s characterizations of the
testimony.  In regard to the third factor,
the complainant testified to the sexual assault and that she was under the age
of 14 at the time of the assault, and the details of the complainant’s testimony were corroborated
by two outcry witnesses, the complainant’s mother and a police officer who
interviewed the complainant at the Children’s Assessment Center.  See
Graves v. State, 176 S.W.3d 422, 430–31 (Tex. App.—Houston [1st Dist.] 2004, pet.
struck) (stating that third Mosley
factor indicated harmless error where victim’s testimony was corroborated by
outcry witness and their credibility was not bolstered by improper jury
argument).  Thus, the second and third
factors also indicate that any error in allowing the State’s argument was
harmless.  Accordingly, we hold that any
error in the trial court’s ruling regarding the first statement is harmless.

          Appellant next complains of the
following statement, which the State also made during the guilt phase of the
trial,

In order for you to acquit the defendant you have to
determine that I haven’t proven my case beyond a reasonable doubt, right?  So if one of you says, “Well, I just don’t
know that [the State] got there.”  It’s
really the duty of the other 11 of you to say, “Well, if we don’t believe her,
we have to have a reason why she would lie.”

 

Appellant objected to the statement as “[a]rguing
outside the law,” and the trial court overruled the objection.

When reviewing an allegation of an improper statement to the
jury, we examine the statement “in light of the entire argument, and not only
isolated sentences.”  See Castillo v. State, 939 S.W.2d 754, 761
(Tex. App.—Houston
[14th Dist.] 1997, pet. ref’d).  Looking
at the context for this particular statement, it is clear that the State was
referring to the complainant’s testimony. 
For example, immediately after making the above statement, the State
continued,

Why would that little girl lie?  Not only why would she lie, but why would she
keep up the lie over, and over, and over? 
When she got the medical examination, and she pulled her legs up just
like all ladies have to, she was lying?  Why would she have told the doctor that
because that is not a comfortable experience for an adult, and it is not a
comfortable experience for a 12-year-old.

 

          We read the State’s argument to be a
response to appellant’s closing argument challenging the credibility of the
complainant and asserting that she was not telling the truth.  For example, appellant argued,

We heard from the complainant
. . . that she didn’t come forward and cry out earlier because she was afraid
of losing [B.R.’s] friendship.  When
testimony indicates that, they basically were already apart in the year 2003,
by going to separate schools, and they were not close anymore. . . . 

 

So if that was the case, she
had all of the year 2003, 2004, 2005, 2006, and it wasn’t until the year 2007
that she came forward with this outcry to her mother.

 

Another point very
telling.  She stated that this—when this occurred she didn’t yell out.  She didn’t tell anybody, she didn’t cry, she
didn’t whimper, she didn’t tell anybody she was in pain, nothing.  I think that’s very telling, very important.
. . . 

 

[T]his assertion that
she needed to get permission . . . for [B.R.] to come to her house, again, does
not make sense.

 

          Because the
State’s second argument was directed toward rebutting appellant’s assertion
that the complainant had fabricated her testimony, it constituted permissible
jury argument.  See Westbrook, 29 S.W.3d at 115; Kibble v. State, 340 S.W.3d 14, 23 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d)
(holding that trial court did not err in permitting State to respond to
“argument of opposing counsel challenging the veracity” of State’s
witnesses).  Accordingly, we hold that
the trial court did not err in overruling appellant’s second objection.  

          Finally,
appellant complains of the following statement, made by the State during the
punishment phase of the trial,

I anticipate that [appellant’s counsel] is going to
stand up here, he’s going to ask you for probation for his client because his
client’s family wants him to get probation and because he wants probation.  But I dare him to give you any good reason
other than, well, he wants it.  That
would justify anything less than a severe prison punishment.  Thank you.     

 

However,
appellant failed to object to this statement at trial.  “Before a defendant will be permitted to
complain on appeal about an erroneous jury argument or that an instruction to
disregard could not have cured an erroneous jury argument, he will have to show
he objected and pursued his objection to an adverse ruling.”  Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1993).  Accordingly, we hold that appellant has
waived any complaint about this third statement for review.

We overrule
appellant’s sole issue.

 

 

 

 

 

 

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Massengale, and Huddle.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. §
22.021(a)(1)(B),(a)(2)(B) (Vernon Supp. 2011).